IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-159-D

| | | |
|---|---|---|
| PETER S. VINAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On June 26, 2013, Peter S. Vinal sued SunTrust Mortgage, Inc., several of SunTrust's employees, the Federal National Mortgage Association ("Fannie Mae"), and Safeguard Properties, LLC in New Hanover County Superior Court. See Compl. [D.E. 1-2] 1–19. SunTrust financed Vinal's purchase of several properties in Wilmington, North Carolina, and the lawsuit arises out of the parties' interactions after Vinal failed to make payments on the loans. Vinal alleged a litany of claims, including breach of contract, trespass, tortious interference with contract, fraudulent inducement, fraudulent misrepresentation, constructive fraud, unfair and deceptive trade practices, violation of North Carolina's Racketeer Influenced and Corrupt Organizations ("RICO") Act, civil conspiracy, and unjust enrichment. See id. 5–18.

Vinal has dropped all claims against the Federal National Mortgage Association and the individual SunTrust employees, leaving only SunTrust and Safeguard as defendants. See [D.E. 31]. Against the remaining defendants, Vinal has dropped all but four claims. Only the trespass, tortious-interference, constructive-fraud, and unfair-and-deceptive-trade-practices claims remain, and all arise under North Carolina law. See id. On August 30, 2013, SunTrust moved to dismiss those claims against it for failure to state a claim upon which relief can be granted. [D.E. 19]; see Fed. R. Civ. P. 12(b)(6). As explained below, the court grants SunTrust's motion.

I.

Vinal is a real-estate agent in Wilmington, North Carolina. Compl. ¶ 7. Between 2005 and 2007, he purchased five properties in Wilmington, at 1153 Arboretum Drive, 619 Sandfiddler Pointe, 1233 Edgewater Club Road, 1530 South 41st Street, and 1536 South 41st Street. Id. ¶ 6. To finance those purchases, he took out nine interest-only loans from SunTrust. Id. The loans were secured by deeds of trust on the five properties. See id., Exs. A–E. Most of the loans were long-term mortgages, with maturity dates between 2035 and 2037. See id., Exs. B–E. The loan associated with the Arboretum Drive property, though, matured on September 1, 2008. Id., Ex. A ¶ 3(A).

At first, Vinal made timely payments on all the loans. After the housing market crashed in 2008, Vinal suffered a "drastic reduction" in his income, and began struggling to meet his obligations to SunTrust. Id. ¶ 7. In March 2009, SunTrust and Vinal met to discuss the status of the loan associated with the Arboretum Drive property, which was six months past maturity but remained unpaid. Id. ¶ 8. Vinal had hoped to refinance his debt to make it more manageable, but at the meeting, SunTrust informed him that due to a change in Fannie Mae guidelines, he was ineligible for refinancing. Id. At that point, Vinal notified SunTrust that he would soon become unable to make timely payments on his loans. Id.

After that March 2009 meeting, Vinal began efforts to avoid foreclosure. First, he contacted SunTrust's loss mitigation department. Id. ¶ 41. Employees in the loss mitigation department told Vinal that, if he missed his payments for three months, he would become eligible for "several modification or refinancing programs." Id. Starting in June 2009, Vinal defaulted on his mortgage payments. Id. ¶ 42. Although employees in SunTrust's loss mitigation department had told Vinal that SunTrust would not report Vinal's default to any credit bureau, id. ¶ 47, Vinal's defaults ended up "severely reducing his credit score." Id. ¶ 42.

In late 2009, the fair market value of Vinal's properties had diminished to well below the remaining principal on his loans. Id. ¶ 8. Vinal then began attempting to short-sell his properties.

2

Id. ¶ 11. On three of his properties—the Arboretum Drive property, the Sandfiddler Pointe property, and the Edgewater Club Road property—Vinal received offers to purchase, and entered into purchase contracts with the potential buyers. Id. ¶¶ 11, 32; see Def. Mem. Supp. Mot. Dismiss, Ex. 1 [D.E. 16-2]. For each of the purchase contracts, SunTrust's approval of the short sale was a condition precedent to any contractual obligations arising, and each contract specifically noted that SunTrust was not obligated to give that approval. See Def. Mem. Supp. Mot. Dismiss, Ex. 1, at 9, 20, 30, 41. Each purchase contract afforded the buyer the right to unilaterally withdraw at any point before SunTrust approved the short sales. See id.

Once Vinal submitted the short-sale offers to SunTrust, SunTrust allegedly "delay[ed] and obstruct[ed] the short sale process by losing important documents, requesting outrageous demands throughout the application process, deliberately shuffling Vinal's files around to different employees, and . . . misrepresenting the approval of buyers' offers." Compl. ¶ 12; see also id. ¶ 33. The offerors ultimately withdrew their offers, and Vinal never completed a short sale. Id. ¶ 33.

In 2010, SunTrust began the process of foreclosing on Vinal's properties. See [D.E. 16-3] (orders allowing foreclosure for each property). As part of that process, SunTrust retained Safeguard to secure the properties. "[N]o fewer than five times" before Vinal's properties had been sold at auction, Safeguard, "acting as a hired contractor for SunTrust," entered Vinal's properties to change the locks. Compl. ¶ 24. In particular, on June 8, 2010, Safeguard changed the locks on the Arboretum Drive property, despite Vinal's instructions to the gated neighborhood's guards not to let Safeguard in the neighborhood. Compl. ¶¶ 25–26. Moreover, "[o]n two separate occasions in May and June of 2010, SunTrust hired Safeguard to change the locks on Vinal's property at 1536 South 41st Street." Id. ¶ 28.

When foreclosure proceedings were ongoing, Vinal had tenants residing at 1530 South 41st Street and 1536 South 41st Street. See id., Ex. G. After foreclosure, Fannie Mae owned both properties. See id. ¶ 35; [D.E. 16-5]. Fannie Mae renegotiated the lease associated with 1536 South

3

41st Street, and evicted the tenants of 1530 South 41st Street. Compl. ¶¶ 35–36. Ultimately, with all five of his properties in foreclosure, Vinal filed for bankruptcy, and obtained a discharge of all debt owed to SunTrust. See id. ¶ 14; [D.E. 16-9].

II.

A federal court sitting in diversity applies the substantive law of the forum state (in this case, North Carolina), but applies federal procedural law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). When state law conflicts with the Federal Rules of Civil Procedure, the Rules govern. Hanna v. Plumer, 380 U.S. 460, 473–74 (1965). This principle applies even when the action was originally filed in state court and removed to federal court. See Fed. R. Civ. P. 81(c)(1). The Federal Rules of Civil Procedure do not have meaning independent of the federal cases that interpret them. Thus, in considering SunTrust's motion to dismiss pursuant to Rule 12(b)(6), this court applies the standard set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd,132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). In considering the motion, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but need not accept a complaint's "legal conclusions, elements of a cause of action, [or] bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). The court may consider documents attached to the complaint or to the motion to dismiss, "so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Likewise, the court "may properly take judicial notice of matters of public record." Sec'y of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

A.

The court first addresses Vinal's trespass claim. "The elements of trespass to real property are: (1) possession of the property by the plaintiff when the alleged trespass was committed; (2) an unauthorized entry by the defendant; and (3) damage to the plaintiff from the trespass." Broughton v. McClatchy Newspapers, Inc., 161 N.C. App. 20, 32, 588 S.E.2d 20, 29 (2003); see Matthews v. Forrest, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952). Here, Vinal does not allege that SunTrust entered his property. Rather, he alleges that Safeguard did so while "acting as a hired contractor for SunTrust." Compl. ¶ 24. Thus, Vinal's trespass claim against SunTrust fails unless he has plausibly alleged sufficient facts to hold SunTrust vicariously liable for Safeguard's actions.

"A principal's vicarious liability for the torts of his agent depends on the degree of control retained by the principal over the details of the work as it is being performed. The controlling principle is that vicarious liability arises from the right of supervision and control." Vaughn v. N.C. Dep't of Human Res., 296 N.C. 683, 686, 252 S.E.2d 792, 795 (1979). Accordingly, in determining whether to impose vicarious liability, courts distinguish between employees and independent contractors. Companies are generally liable for the torts of their employees, but "[t]he general rule is that a company is not liable for the torts of an independent contractor committed in the performance of the contracted work." Coastal Plains Utils., Inc. v. New Hanover Cnty., 166 N.C. App. 333, 344, 601 S.E.2d 915, 923 (2004).

To determine whether an entity is an employee or independent contractor, the court must consider the extent to which

> [t]he person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the

5

regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

McCown v. Hines, 353 N.C. 683, 687, 549 S.E.2d 175, 177–78 (2001) (quotation omitted).

Here, Vinal's only allegations regarding the relationship between SunTrust and Safeguard are that "SunTrust hired Safeguard . . . to change the locks" on Vinal's properties, Compl. ¶ 13, that SunTrust "deliberately ordered Safeguard to change the locks on Vinal's properties," id. ¶ 21, and that Safeguard was "acting as a hired contractor for SunTrust." Id. ¶ 24.

Under North Carolina law, these allegations do not involve the level of control required for SunTrust to be vicariously liable for Safeguard's actions. The complaint makes clear that Safeguard is an independent company from SunTrust, and was not in SunTrust's regular employ but rather was hired for the specific task of managing Vinal's properties before foreclosure. Vinal does not allege that SunTrust had control over the manner in which Safeguard carried out that task, and Vinal's complaint identifies Safeguard as a "contractor." Thus, Vinal has not plausibly alleged facts that would support holding SunTrust vicariously liable for Safeguard's alleged torts, and Vinal's trespass claim against SunTrust is dismissed.

B.

Next, the court addresses Vinal's tortious-interference claim. To state a claim for tortious interference with contract, a plaintiff must allege that "(1) a valid contract [existed] between the plaintiff and a third person which confer[red] upon the plaintiff a contractual right against a third person; (2) the defendant kn[ew] of the contract; (3) the defendant intentionally induce[d] the third person not to perform the contract; (4) and in doing so act[ed] without justification; (5) resulting in actual damage to plaintiff." United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

Vinal claims that SunTrust tortiously interfered both with the short-sale contracts he had entered with potential buyers for the Arboretum Drive, Sandfiddler Pointe, and Edgewater Club

6

Road properties and with the landlord–tenant contracts he had entered with the tenants of the two 41st Street properties. Assuming without deciding that these were all valid contracts, that SunTrust knew of them, that SunTrust induced the tenants and potential buyers not to perform, and that in doing so SunTrust caused actual damage to Vinal, "[a] motion under Rule 12(b)(6) should be granted when the complaint reveals that the interference was justified or privileged." Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216, 220, 367 S.E.2d 647, 650 (1988). Generally, a defendant's interference is unjustified only if "the act is done other than as a reasonable and bona fide attempt to protect the interest of the defendant." Smith v. Ford Motor Co., 289 N.C. 71, 91, 221 S.E.2d 282, 294 (1976) (quotation omitted). "If the defendant's only motive is a malicious wish to injure the plaintiff, his actions are not justified. . . . If, however, the defendant is acting for a legitimate business purpose, his actions are privileged." Hooks, 322 N.C. at 221, 367 S.E.2d at 650 (citation omitted).

Vinal has not plausibly alleged that SunTrust had a malicious wish to injure him. Instead, the complaint makes clear that SunTrust justifiably interacted with Vinal and ultimately proceeded with foreclosure in order to minimize the financial loss associated with its loans to Vinal. SunTrust acted with a legitimate business purpose. See, e.g., Holder v. Atl. Joint Stock Land Bank of Raleigh, 208 N.C. 38, 38, 178 S.E. 861, 862 (1935). Thus, Vinal has not plausibly alleged a tortious-interference claim against SunTrust and that claim is dismissed.

C.

Next, the court addresses Vinal's constructive-fraud claim. To state a claim for constructive fraud, a party must allege "(1) the existence of a fiduciary duty; and (2) a breach of that duty." Keener Lumber Co. v. Perry, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (2002). A party asserting a constructive-fraud claim must allege "the facts and circumstances . . . which created the relation of trust and confidence," and the facts and circumstances that "led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the [detriment] of plaintiff." Rhodes v. Jones, 232 N.C. 547, 549, 61 S.E.2d 725,

726 (1950); see, e.g., Hunter v. Guardian Life Ins. Co. of Am., 162 N.C. App. 477, 482, 593 S.E.2d 595, 599 (2004). "A fiduciary duty arises when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reposing confidence." Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 60, 418 S.E.2d 694, 699 (1992) (quotation omitted).

"[T]he mere existence of a debtor–creditor relationship between the parties does not create a fiduciary relationship," because "parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract." Id. at 61, 418 S.E.2d at 699 (quotation and alteration omitted). Of course, neither does the existence of a debtor–creditor relationship between the parties preclude a fiduciary relationship when one party has gone beyond the usual nature of that relationship and taken on the role of a fiduciary. For example, the North Carolina Court of Appeals has held that if a creditor provides legal advice to a debtor, a fiduciary relationship may arise. See Dallaire v. Bank of Am., N.A., 738 S.E.2d 731, 735 n.5 (N.C. Ct. App. 2012), petition for disc. review granted, 747 S.E.2d 535 (N.C. 2013).

Vinal claims that SunTrust was his "sole source of advice and counsel on how to resolve the loan crisis," and thereby created a fiduciary relationship with him. Pl. Mem. Opp. Mot. Dismiss [D.E. 23] 11–12. But in attempting to "resolve the loan crisis," SunTrust did not undertake to provide Vinal with any services beyond those inherent in the creditor–debtor relationship. See, e.g., Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 572–73 (7th Cir. 2012) (applying Illinois law and rejecting argument that a bank becomes a fiduciary by advising a borrower about loss-mitigation programs); Robinson v. Deutsche Bank Nat'l Trust Co., No. 5:12-CV-590-F, 2013 WL 1452933, at *14–16 (E.D.N.C. Apr. 9, 2013) (unpublished) (applying North Carolina law and rejecting argument that a bank becomes a fiduciary by discussing with a borrower different loan-modification options). Thus, Vinal has not plausibly alleged a fiduciary relationship with SunTrust and his constructive-fraud claim against SunTrust is dismissed.
8

D.

Finally, the court addresses Vinal's unfair-and-deceptive-trade-practices ("UDTPA") claim. N.C. Gen. Stat. § 75-1.1(a) prohibits "unfair or deceptive acts or practices in or affecting commerce," and N.C. Gen. Stat. § 75-16 creates a private right of action to enforce that prohibition. To state a UDTPA claim, a plaintiff must allege that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); RD & J Props. v. Lauralea-Dilton Enters., LLC, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. . . . [A] practice is deceptive if it has the capacity or tendency to deceive." Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citation omitted). The unfair or deceptive conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. See, e.g., Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996); Branch Banking & Trust Co., 107 N.C. App. at 61, 418 S.E.2d at 700. Whether an act is unfair or deceptive under the UDTPA is a question of law for the court. See, e.g., Tucker v. Boulevard at Piper Glen LLC, 150 N.C. App. 150, 153, 564 S.E.2d 248, 250 (2002); Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

Vinal rests his UDTPA claim on SunTrust's failure to warn him of changes in Fannie Mae's policies that affected his ability to refinance, SunTrust's informing him that he would be eligible for certain loss-mitigation programs only after defaulting on his mortgage payments for three months, SunTrust's failure to prevent his defaults from being reported to the credit agencies, and SunTrust's refusal to approve the short-sale offers he had received. See Pl. Mem. Opp. Mot. Dismiss 12–13.

As already explained, these actions involve no breach of a legal duty by SunTrust towards Vinal, much less the sort of egregious conduct required to support a UDTPA claim. See, e.g., Ellis v. La.-Pac. Corp., 699 F.3d 778, 786–88 (4th Cir. 2012); Kelly v. Ga.-Pac. LLC, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009). Rather, they involve SunTrust's legitimate efforts to mitigate its losses on the loans it made to Vinal. Accordingly, Vinal has not plausibly alleged a UDTPA claim against SunTrust and that claim against SunTrust is dismissed. Because Vinal has failed to state a claim upon which relief can be granted against SunTrust, the court need not address SunTrust's alternative argument that the results of related state-foreclosure proceedings bar Vinal's claims.

III.

In sum, the court GRANTS SunTrust's motion to dismiss [D.E. 19] and DISMISSES SunTrust as a defendant.

SO ORDERED. This 12 day of February 2014.

JAMES C. DEVER III
Chief United States District Judge