IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-159-D

| | |
|---|---|
| PETER S. VINAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| FEDERAL NATIONAL MORTGAGE ) | |
| ASSOCIATION, et al., ) | |
| ) | |
| Defendants. ) | |

On June 26, 2013, Peter S. Vinal ("Vinal" or "plaintiff") sued SunTrust Mortgage, Inc. ("SunTrust"), several of SunTrust's employees, the Federal National Mortgage Association ("Fannie Mae"), and Safeguard Properties, LLC ("Safeguard"), in New Hanover County Superior Court. See Compl. [D.E. 1-2] 1–19. SunTrust financed Vinal's purchase of several properties in Wilmington, North Carolina, and the lawsuit arises out of the parties' interactions after Vinal failed to make payments on the loans. Vinal alleged a litany of claims, including breach of contract, trespass, tortious interference with contract, fraudulent inducement, fraudulent misrepresentation, constructive fraud, unfair and deceptive trade practices, violation of North Carolina's Racketeer Influenced and Corrupt Organizations ("RICO") Act, civil conspiracy, and unjust enrichment. See id. 5–18. On July 31, 2013, with Safeguard's consent, SunTrust and its defendant-employees and Fannie Mae removed the case to this court. See [D.E. 1].

Vinal subsequently dropped all claims against Fannie Mae and the individual SunTrust employees, leaving only SunTrust and Safeguard as defendants. See [D.E. 24, 31]. Against the remaining defendants, Vinal voluntarily dismissed all but four claims. See [D.E. 24]. On August 30, 2013, SunTrust moved to dismiss those claims against it for failure to state a claim upon which relief can be granted [D.E. 19]. On February 14, 2014, the court granted SunTrust's motion to dismiss and dismissed SunTrust as a defendant [D.E. 36].

The only remaining claim is Vinal's trespass claim against Safeguard. On October 14, 2014, Safeguard moved for summary judgment [D.E. 47] and filed a supporting affidavit [D.E. 48] and a supporting memorandum with attached exhibits [D.E. 49]. On November 4, 2014, Vinal responded in opposition to Safeguard's motion for summary judgment [D.E. 51]. As explained below, the court grants Safeguard's motion for summary judgment.

I.

Vinal is a real-estate broker in Wilmington, North Carolina. Vinal Dep. [D.E. 49-8] 7–8 (deposition pages 15–16, 20–21). Between 2005 and 2007, Vinal purchased five properties in Wilmington, at 1153 Arboretum Drive, 619 Sandfiddler Pointe, 1233 Edgewater Club Road, 1530 South 41st Street, and 1536 South 41st Street. Compl. [D.E. 1-2] ¶ 6; cf. Vinal Dep. [D.E. 49-8] 8–9 (deposition pages 21–22, 24–25). To finance those purchases, Vinal took out nine interest-only loans with SunTrust. Vinal Dep. [D.E. 49-8] 8–10, 19 (deposition pages 22–23, 25, 27, 63–64). The loans were secured by deeds of trust on the five properties. See Compl., Exs. A–E. Each deed of trust contained the following provisions:

> **Preservation, Maintenance and Protection of the Property; Inspections.**
> Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.
>
> Lender or its agent may make reasonable entries upon and inspection of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

\*\*\*

2

> **Protection of Lender's Interest in the Property and Rights Under this Security Agreement.** If . . .Borrower fails to perform the covenants and agreements contained in this Security Instrument, . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

Id. Most of the loans were long-term mortgages, with maturity dates between 2035 and 2037. See id., Exs. B–E. The loan associated with the Arboretum Drive property, though, matured on September 1, 2008. Id., Ex. A.

At first, Vinal made timely payments on the loans. After the housing market crashed in 2008, Vinal suffered a "drastic reduction" in his income and began struggling to meet his mortgage obligations. Id. ¶ 7. In March 2009, SunTrust and Vinal met to discuss the status of the loan associated with the Arboretum Drive property. Id. ¶ 8; cf. Vinal Dep. [D.E. 49-8] 15, 20, 37 (deposition pages 50, 67, 137–38). Vinal had hoped to refinance his debt to make it more manageable, but at the meeting, SunTrust informed him that, due to a change in Fannie Mae guidelines, he was ineligible for refinancing. Compl. ¶ 8; cf. Vinal Dep. [D.E. 49-8] 15, 20, 37 (deposition page 50, 67, 137–38). At that point, Vinal notified SunTrust that he would soon become unable to make timely payments on his loans. Compl. ¶ 8.

After that March 2009 meeting, Vinal began efforts to avoid foreclosure. First, he contacted SunTrust's loss mitigation department. Id. ¶ 41; cf. Vinal Dep. [D.E. 49-8] 15, 37 (deposition pages 50, 138). Employees in the loss mitigation department told Vinal that, if he missed his payments for three months, he would become eligible for "several modification or refinancing programs." Compl. ¶ 41. Starting in June 2009, Vinal defaulted on his mortgage payments. Id. ¶¶ 10, 42.

In late 2009, the fair market value of Vinal's properties had diminished to well below the remaining principal on his loans. Id. ¶ 8; Vinal Dep. [D.E. 49-8] 39 (deposition pages 145–46). Vinal then began attempting to short-sell his properties. Compl. ¶ 11; Vinal Dep. [D.E. 49-8] 12,

3

14, 18, 20, 22 (deposition pages 36, 44–45, 59–62, 68–70, 76). On three of his properties—the Arboretum Drive property, the Sandfiddler Pointe property, and the Edgewater Club property—Vinal received offers to purchase, and entered into purchase contracts with the potential buyers. Compl. ¶¶ 11, 32; see [D.E. 16-2]; Vinal Dep. [D.E. 49-8] 12, 20, 22, 38 (deposition page 35–37, 69–70, 76, 139). For each of the purchase contracts, SunTrust's approval of the short sale was a condition precedent to any contractual obligations arising, and each contract specifically noted that SunTrust was not obligated to give that approval. See [D.E. 16-2] 9, 20, 30, 41. Each purchase contract also gave the buyer the unilateral right to withdraw at any point before SunTrust approved the short sales. See id.

Vinal submitted the short-sale offers to SunTrust, but SunTrust either denied the offers or took too long to respond. Thus, the buyers withdrew their offers. See Vinal Dep. [D.E. 49-8] 12, 20–21, 26, 38–39 (deposition pages 36–37, 70–71, 93, 139–44). Vinal never completed a short sale.

In late 2009, SunTrust began sending work orders for Vinal's five properties to Safeguard, a company which "performs preservation services for its clients who are typically banks, lenders, and loan servicers, on residential dwellings, by hiring local independent contractors who perform the work on a per order basis." Meyer Aff. [D.E. 48] ¶¶ 2, 5, 7. At first, SunTrust only sent work orders for exterior inspections of the properties. Id. ¶ 14. In 2010, however, Safeguard "received work orders from SunTrust, ordering an initial secure for the Arboretum Property . . . , the proprieties at 1530 and 1536 South 41st Street . . ., and the property at 1233 Edgewater Club Road." Id. ¶ 15. An "initial secure" includes the following services: (1) changing the locks and securing the property; (2) boarding broken windows; (3) cutting the grass and/or winterizing the property; (4) capping any and all exposed wires and gas lines; (5) removing any hazards from the property; and, (6) submitting a bid for any damages that must be cured. Id. ¶ 11. In turn, Safeguard "submitted work orders to independent contractors in and around New Hanover County, North Carolina, to perform the ordered preservation services at the Properties," and the contractors performed the requested work

4

throughout 2010. Id. ¶ 16; see id. ¶¶ 17–21. As part of their orders, Safeguard's contractors changed the locks on the Arboretum Drive property, the Edgewater Club property, and the two properties on South 41st Street. See Vinal Dep. [D.E. 49-8] 9, 12, 14–15, 17 (deposition pages 24, 37–38, 44–47, 55–56); Meyer Aff. ¶¶ 17–20. Safeguard's contractors did not change the locks at the Sandfiddler Pointe property. Vinal Dep. [D.E. 49-8] 22 (deposition page 76); cf. Meyer Aff. ¶ 21.

On March 26, 2010, Safeguard received a work order "to secure and winterize" the Arboretum Drive property. Meyer Aff. ¶ 22. On March 30, 2010, "subcontractors who received the order to lock and winterize the home were stopped by a guard at the gated entrance." Id.; cf. Vinal Dep. [D.E. 49-8] 9, 21, 27 (deposition pages 24, 73, 95–97). The guard called Vinal, who instructed the guard to deny Safeguard's contractors permission to enter. Vinal Dep. [D.E. 49-8] 9, 27 (deposition pages 24, 95–96).

On June 2, 2010, Safeguard's contractors returned to the Arboretum Drive property, inspected the exterior of the property, and "found it to be secured and vacant." Meyer Aff. ¶ 22. On June 22, 2010, SunTrust submitted a work order for Safeguard to "secure the Arboretum Property and cut the grass." Id. "When contractors who received the work order from Safeguard went to perform it, they found the Arboretum Property to be vacant and unsecure due to missing locks and the doors and windows being left open." Id. The contractors secured the property. Id. While changing the locks, the contractors damaged the Arboretum Drive property's front door. Vinal Dep. [D.E. 49-8] 16, 28 (deposition pages 52–53, 101).

In 2010, SunTrust began foreclosing on Vinal's properties. See [D.E. 16-3] (orders allowing foreclosure for each property). When foreclosure proceedings were ongoing, Vinal had tenants residing at 1530 South 41st Street and 1536 South 41st Street. See Meyer Aff. ¶ 19–20; [D.E. 16-3] 2, 5.

On September 10, 2010, the notice of foreclosure for the 1536 South 41st Street property was filed, and the property was conveyed to Fannie Mae. See [D.E. 49-2]; see also [D.E. 16-5]. On

5

October 1, 2010, the notice of foreclosure for the 1530 South 41st Street property was filed, and the property was conveyed to Fannie Mae. See [D.E. 49-3]; see also [D.E. 16-5]. Fannie Mae renegotiated the lease associated with 1536 South 41st Street, and evicted the tenants of 1530 South 41st Street. Compl. ¶¶ 35–36; Vinal Dep. [D.E. 49-8] 17, 34 (deposition pages 55–56, 123).

On October 8, 2010, the notice of foreclosure for the Sandfiddler Pointe property was filed, which noted that the property had been sold at a foreclosure sale. See [D.E. 49-4]. On November 17, 2010, the notice of foreclosure for the Edgewater Club property was filed, which noted that the property had been sold at a foreclosure sale. See [D.E. 49-5].

On February 4, 2011, Vinal filed for Chapter 7 bankruptcy. See [D.E. 49-6]. On March 4, 2011, Vinal filed his bankruptcy schedules. See [D.E. 49-7]. In his schedule B, Vinal did not list any legal claims as personal property. See [D.E. 49-7] 6. Vinal also did not identify any legal claims as "exempt" in his schedule C listings. See [D.E. 49-7] 9–15. The trustee reports also did not list any legal claims as assets. See [D.E. 49-16–49-19]. Although foreclosure proceedings on the Arboretum Drive property were initially stayed pending resolution of the bankruptcy petition, on April 12, 2011, the stay was lifted and the Arboretum Drive property was subsequently sold by SunTrust. See [D.E. 49-9]. On May 16, 2011, Vinal obtained a discharge of all debt owed to SunTrust. See [D.E. 49-10].

On February 27, 2013, the bankruptcy estate's trustee reported that he had "neither received any property nor paid any money on account of this estate; that [he had] made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there [was] no property available for distribution from the estate over and above that exempted by law." In re Peter S. Vinal, No. 11-00851-8-JRL (Bankr. E.D.N.C. Feb. 27, 2013). Thus, the trustee certified that the estate "ha[d] been fully administered" and requested a discharge from his duties as trustee. Id. On February 28, 2013, the bankruptcy court issued its final decree, discharged the trustee, and closed Vinal's case. In re Peter S. Vinal, No. 11-00851-8-JRL (Bankr. E.D.N.C. Feb.

6

28, 2013), [D.E. 29]. On June 26, 2013, Vinal filed his complaint, which originally alleged ten claims.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 380 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, summary judgment is appropriate unless the nonmoving party can affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Likewise, inadmissable hearsay cannot create a genuine issue of material fact. See, e.g., Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). Nor will a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . be []sufficient; there must be evidence on which the jury could reasonably find for [the nonmoving party]." Anderson, 477 U.S. at 252; see Evans, 80 F.3d at 958–59. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587–88.

The court has jurisdiction based on diversity, and North Carolina law governs Vinal's trespass claim. Thus, this court must determine how the Supreme Court of North Carolina would

7

rule. See, e.g., Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). "If the Supreme Court of [North Carolina] has spoken neither directly nor indirectly on the particular issue before us, [this court is] called upon to predict how that court would rule if presented with the issue." Id. (quotation omitted). In making that prediction, the court may consider opinions of the North Carolina Court of Appeals, treatises, and the practices of other states. Id.

In moving for summary judgment, Safeguard makes three arguments: (1) Vinal lacks standing to bring this claim against Safeguard because the claim belongs to the bankruptcy estate or, alternatively, Vinal should be judicially estopped from presenting the claim given his failure to disclose the claim during the bankruptcy proceedings; (2) Safeguard cannot be vicariously liable for any trespasses committed by the independent contractors who were hired by Safeguard to complete the work orders on Vinal's properties; and, (3) any entries by Safeguard onto Vinal's properties were not trespasses because they were authorized by Vinal in the deeds of trust for each property. See Def.'s Mem. Supp. Mot. Summ. J. [D.E. 49] 9–21.

Initially, the court considers whether Vinal has standing to bring this claim. "Standing is a threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers . . . . The core goal of the standing inquiry is to ensure that a plaintiff bringing an action has enough of a stake in the case to litigate it properly." Pye v. United States, 269 F.3d 459, 466 (4th Cir. 2001). Safeguard argues that Vinal's claim is property of the bankruptcy estate and that, as such, only the bankruptcy trustee has standing to pursue it. Def.'s Mem. Supp. Mot. Summ. J. 10. The court agrees.

Under the Bankruptcy Reform Act, "all property of the debtor is included in the bankrupt estate, including exempt property. After the property comes into the estate, then the debtor is permitted to exempt it . . . and the court will have jurisdiction to determine what property may be exempted and what remains as property of the estate." Tignor v. Parkinson, 729 F.2d 977, 980 (4th

8

Cir. 1984) (quotation omitted), superseded by statute on other grounds by, Va. Cod. Ann. § 34-28.1. The bankruptcy estate consists of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1). "The scope of [section 541(a)] is broad. It includes all kinds of property, including tangible or intangible property [and] causes of action." Tignor, 729 F.2d at 980 (quotation omitted); see In re Bogdan, 414 F.3d 507, 512 (4th Cir. 2005); In re Cottrell, 876 F.2d 540, 542–43 (6th Cir. 1989); Robertson v. Flowers Baking Co. of Lynchburg, LLC, No. 6:11-CV-00013, 2012 WL 830097, at *3 (W.D. Va. Mar. 6, 2012) (unpublished), aff'd, 474 F. App'x 242 (4th Cir. 2012) (per curiam) (unpublished); In re Hamlett, 304 B.R. 737, 740–41 (Bankr. M.D.N.C. 2003). Contingent and unliquidated claims are considered property of the estate, and debtors have an affirmative, continuing duty to disclose them to the bankruptcy court. In re Coastal Plains, Inc., 179 F.3d 197, 207–08 (5th Cir. 1999).

Even claims that are unknown to the debtor when the debtor files for bankruptcy become property of the bankruptcy estate. "Property of the estate includes all of the debtor's interest in any cause of action that has accrued prior to the bankruptcy petition. And all, 11 U.S.C. § 541(a)(1), means 'all'." Miller v. Pac. Shore Funding, 287 B.R. 47, 50 (D. Md. 2002); see Sain v. HSBC Mortg. Servs., Inc., No. 4:08-CV-2856, 2009 WL 2858993, at *5 (D.S.C. Aug. 28, 2009) (unpublished). Moreover, "[p]roperty of the debtor does not escape the bankruptcy estate merely because the debtor is unaware of its existence." Miller, 287 B.R. at 50; see In re Coastal Plains, 179 F.3d at 208 ("The debtor need not know all of the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." (quotation omitted)); United States ex rel. Saidiani v. NextCare, Inc., No. 3:11CV141, 2014 WL 4672417, at *2–4 (W.D.N.C. Sept. 18, 2014) (unpublished). Likewise, a cause of action that was never disclosed to the bankruptcy court is considered property of the estate and is surrendered to the

9

bankruptcy trustee at filing. See Robertson, 2012 WL 8300097, at * 4; Sain, 2009 WL 2858993, at *5.

"If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999); see Wilson v. Dollar General Corp., 717 F.3d 337, 342 (4th Cir. 2013); Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132, 136 (4th Cir. 1988); Robertson, 2012 WL 830097, at *4. Thus, "[u]ntil the trustee has abandoned . . . [the] action, the [debtor] cannot proceed with their claims in district court." Nat'l Am. Ins. Co., 17 F.3d at 441; see Steyr-Daimler-Puch, 852 at 136.

Vinal's trespass claim belongs to his bankruptcy estate. Under North Carolina law, if damages are caused by an intermittent trespass, "a plaintiff may recover for any damages within three years before the action is filed." Baker v. Centex Real Estate Corp., 183 N.C. App. 154, 643 S.E.d 2d 676, 2007 WL 1246914, at *4 (2007) (unpublished table decision) (quoting Galloway v. Pace Oil Co., 62 N.C. App. 213, 214, 302 S.E.2d 472, 473 (1983)); see N.C. Gen. Stat. § 1-52(3). Thus, Vinal's trespass claim accrued no later than November 18, 2010, the latest date that Safeguard sent contractors to Vinal's properties to perform work orders. See Meyer Aff. ¶¶ 17–21.[1] Vinal did not petition for bankruptcy until February 2011, and his schedules did not disclose any potential claims. See [D.E. 49-7] 6 (under the listing for "contingent and unliquidated claims of every nature," Vinal selected "none"). Because Vinal's claim accrued before he filed his bankruptcy petition, the claim is property of the estate and should have been disclosed on the bankruptcy schedules. See In re

---

[1] To the extent Vinal seek damages other than for physical damage to his property for trespasses occurring before June 26, 2010, the court questions whether the action is timely under North Carolina law regarding intermittent trespasses. See [D.E. 49-20]. As for any claim concerning physical damage to Vinal's property, the claim accrued when the physical damage to Vinal's property became apparent or ought reasonably to have become apparent to Vinal. N.C. Gen. Stat. § 1-52(16). Moreover, if any of Safeguard's actions were considered "continuing trespasses," the claims would have accrued no later than the date of the original trespass. See N.C. Gen. Stat. § 1-52(3). Nonetheless, given the potpourri of fatal defects in Vinal's case, the court need not resolve the timeliness issue.

10

Coastal Plains, 179 F.3d at 208. Thus, "only the bankruptcy trustee—not Plaintiff—" has "standing to pursue such claims." Robertson, 2012 WL 830097, at *4; see Saidiani, 2014 WL 4672417, at *2–4; Harris v. hhgregg, Inc., No. 1:11CV813, 2013 WL 1331166, at *4–6 (M.D.N.C. Mar. 29, 2013) (unpublished); Brockington v. Jones, No. 4:05-3267-RBH-TER, 2007 WL 4812205, at *3 (D.S.C. Nov. 28, 2007) (unpublished), report and recommendation adopted, 2008 WL 238707 (D.S.C. Jan. 23, 2008) (unpublished).

Vinal might be able to pursue his claim if it had been abandoned, but the bankruptcy trustee has not abandoned it. Although "any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered," 11 U.S.C. § 554(c), "the operation of this provision is limited to property that is properly scheduled by the debtor and property which is owned by the debtor but not scheduled, is not abandoned when the case is closed." Hamlett, 304 B.R. at 741; see Hutchins v. IRS, 67 F.3d 40, 43 (3d Cir. 1995); Jeffrey v. Desmond, 70 F.3d 183, 186 (1st Cir. 1995). Because Vinal never scheduled this trespass claim against Safeguard, the claim was not abandoned by operation of law with the closing of the bankruptcy case. See, e.g., In re Hettick, 413 B.R. 733, 753 (Bankr. D. Mont. 2009). Thus, the claim remains property of the bankruptcy estate and only the bankruptcy trustee has standing to pursue it. See Hamlett, 304 B.R. at 741–42. Accordingly, Vinal does not have standing to pursue this claim, and this court lacks subject-matter jurisdiction to adjudicate it.

Alternatively, judicial estoppel bars Vinal's claim.[2] The doctrine of judicial estoppel "precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996). Judicial estoppel applies when:

---

[2] "Although this is a diversity case, . . . federal law controls the application of judicial estoppel, since it relates to the protection of the integrity of the federal judicial process." Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 n.4 (4th Cir. 1982).

11

> (1) the party to be stopped . . . advanc[es] an assertion that is inconsistent with a position taken during previous litigation; (2) the position [is] one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (3) the party to be estopped must have acted intentionally, not inadvertently.

Folio v. City of Clarksburg, 134 F.3d 1211, 1217–18 (4th Cir. 1998); Lowery, 92 F.3d at 224.

Here, Vinal advances an assertion that is inconsistent with a position taken during his bankruptcy proceeding, namely, that he possesses a cause of action against Safeguard. See, e.g., In re Coastal, 179 F.3d at 210; In re Family Dollar FLSA Litig., No. 3:08 MD 1932, 2009 WL 1750908, at *3 (W.D.N.C. June 19, 2009) (unpublished); Brockington, 2007 WL 4812205, at *4. The existence of Vinal's claim is a position of fact, which the bankruptcy court and trustee relied upon —and the bankruptcy court thus accepted—when discharging Vinal as a debtor and when administering the bankruptcy estate. See In re Peter S. Vinal, No. 11-00851-8-JRL (Bankr. E.D.N.C. Feb. 27, 2013); see also Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 784 (9th Cir. 2001); In re Family Dollar, 2009 WL 1750908, at *3; Brockington, 2007 WL 4812205, at *4.

Lastly, Vinal's failure to disclose the cause of action was not inadvertent. Generally, a "debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, . . . the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." In re Coastal Plains, 179 F.3d at 210; see Saidiani, 2014 WL 4672417, at *4; In re Family Dollar FLSA Litig., No. 3:08 MD 1932, 2011 WL 4899972, at *2–3 (W.D.N.C. Oct. 14, 2011) (unpublished). Although Vinal claims that "[t]hese causes of action were simply unknown to [Vinal] at the time his Schedule B was completed," Pl.'s Resp. [D.E. 51] 8, the record shows otherwise. See, e.g., Vinal Dep. [D.E. 49-8] 9 (deposition page 24) (Vinal explaining that he was aware that the locks on some of his properties had been changed prior to receiving the phone call from the guard at the Arboretum Drive property and that the call caused him to investigate the matter); Vinal Dep. [D.E. 49-8] 12 (deposition pages 37–38) (Vinal was aware that "Safeguard came in and changed the locks" on his Edgewater Property "while [he] still owned it" because it caused him to not be able to show the

12

property anymore); Vinal Dep. [D.E. 49-8] 16 (deposition page 51) (while Vinal was trying to short-sell his properties an agent informed Vinal that he was locked out and "[t]hat's how [Vinal] found out how Safeguard had come back in to a place that they were told not to come in"); Vinal Dep. [D.E. 49-8] 17 (deposition pages 55–57) (in "either '09 or '10," Vinal helped a tenant get back into the 1536 South 41st property after Safeguard changed the locks).

Vinal was aware of the factual bases for his trespass claim before filing his bankruptcy petition. See Hamilton, 270 F.3d at 784 ("Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset."); In re Family Dollar, 2011 WL 4899972, at *2 ("[D]ebtors are charged with knowledge of their claims when factually aware of the basis for the claims."). Moreover, Vinal "stood to profit from his deception by shielding any potential recovery in this case from his creditors." Saidiani, 2014 WL 4672417, at *4; see In re Coastal Plains, 179 F.3d at 212–13; In re Family Dollar, 2011 WL 4899972, at *3.

Vinal makes no serious rebuttal argument concerning standing or judicial estoppel. Instead, Vinal cites a case from the United States Courts of Appeal for the Third Circuit and argues that the court should "relax the stringent consequences of the judicial estoppel doctrine," which Vinal contends is "too harsh and result[s] in prejudicial consequences to plaintiffs." Pl.'s Resp. 6–7. In short, Vinal argues that "as a result of the circumstances of this particular case, [the standing and judicial estoppel] theories should not apply, and at the very least, Plaintiff should be permitted to reopen his bankruptcy." Pl.'s Resp. 5–6.

Unfortunately for Vinal, this court sits within the United States Courts of Appeals for the Fourth Circuit, not the Third Circuit, and the doctrines of standing and judicial estoppel apply to him as they would apply to any plaintiff. Morever, it is up to the bankruptcy court whether to reopen Vinal's case, and to date, it has not done so. Cf. Hawkins v. Landmark Fin. Co., 727 F.2d 324,

13

326–27 (4th Cir. 1984) (holding that the decision to reopen a case is "a discretionary matter" for the bankruptcy court); Hamlett, 304 B.R. at 740. Thus, the court grants Safeguard's motion for summary judgment.

Alternatively, assuming without deciding that Safeguard could be held vicariously liable for the actions of the contractors it employed to perform the work orders on Vinal's properties, Vinal's trespass claim fails. A trespass is an "<u>unauthorized</u> entry on land in the peaceable possession of another . . . , without regard to the degree of force used and irrespective of whether actual damage is done." Matthews v. Forrest, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952) (emphasis added); see Singleton v. Haywood Elec. Membership Corp., 357 N.C. 623, 627, 588 S.E.2d 871, 874 (2003) (noting that the elements for civil trespass under North Carolina law are: "(1) possession of the property by plaintiff when the alleged trespass was committed; (2) an unauthorized entry by defendant; and (3) damage to plaintiff" (quotation omitted)).

Vinal admits that he defaulted on his loans. See Compl. ¶¶ 10, 42. As a result of Vinal's default, SunTrust (and their agent Safeguard) were entitled under the deeds of trusts to "do and pay for whatever [was] reasonable or appropriate to protect [SunTrust's] interest in the Propert[ies] and rights under this Security Instrument, including . . . entering the Property to make repairs, change locks, replace or board up doors and windows. . . ." See Compl., Exs. A–E. Moreover, SunTrust (and their agent Safeguard) had the right to inspect the exterior of the properties. See Compl., Exs. A–E ("Lender or its agent may make reasonable entries upon and inspection of the Property.").

Vinal argues that Safeguard's actions, specifically the lock changes, were not reasonable because Vinal still "retained equitable title and had a right of possession to the property." Pl.'s Resp. 11–14. Vinal, however, cannot overcome the express authorization that he gave to SunTrust (and Safeguard) in the deeds of trust to, among other things, change the locks in the event of his default. See, e.g., PNC Bank, N.A. v. Van Hoornaar, 44 F. Supp. 3d 846, 855–57 (E.D. Wis. 2014); Thompson v. JP Morgan Chase Bank, N.A., Civ. No. WDQ-13-1982, 2014 WL 4269060, at *6–7

14

(D. Md. Aug. 27, 2014) (unpublished); McCray v. Specialized Loan Serv., Civ. A. No. RDB-12-02200, 2013 WL 1316341, at *5 (D. Md. Mar. 28, 2013) (unpublished); Bennett v. Bank of Am., N.A., No. 3:12CV34-HEH, 2012 WL 1354546, at *10 (E.D. Va. Apr. 18, 2012). In agreeing to the provisions in the deeds of trust, Vinal contractually limited his equitable interests in the property upon default and authorized the actions about which he now complains. Thus, Safeguard's entries were not trespasses. Rather, because they were authorized entries onto Vinal's properties. Accordingly, Vinal's trespass claim fails.

III.

In sum, the court grants Safeguard's motion for summary judgment [D.E. 47]. Defendants may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 18 day of September 2015.

JAMES C. DEVER III
Chief United States District Judge

15